31 N.J. Super. 411 (1954)
107 A.2d 13
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES O'LEARY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 21, 1954.
Decided July 6, 1954.
*413 Before Judges EASTWOOD, FREUND and FRANCIS.
Mr. John B. Molineux, Assistant Prosecutor, argued the cause for the plaintiff-respondent (Mr. Alex Eber, Middlesex County Prosecutor).
Mr. Edward J. Madden argued the cause for the defendant-appellant.
*414 The opinion of the court was delivered by FRANCIS, J.A.D.
Appellant was indicted on two counts: The first charged him with breaking and entering the building of the Stelton Recreation Center in Raritan Township, with intent to steal money, goods and chattels of the Center, in violation of N.J.S. 2A:94-1; the second charged him with the possession of burglary tools contrary to N.J.S. 2A:94-3. The second count was dismissed on motion at the close of the State's case. The jury convicted appellant on the first count and he now appeals.
Motions for judgment of acquittal were made at the close of the State's proof and at the end of the entire case on the ground of failure to establish a breaking and entry with intent to steal. The denial thereof is the principal ground of appeal. Also urged is that error was committed in the admission of the alleged burglary tools which are specifically enumerated in the second count of the indictment.
The proof offered by the State showed that shortly after 2 A.M. on November 30, 1953, two police officers who were patrolling in a radio car received a call as the result of which they drove to the premises of the Stelton Recreation Center on the northeast corner of Plainfield Avenue and Route 27 in Raritan, N.J.
In the rear of the main building are a store and a house and garage, and apparently around two or three sides of the rear an eight-foot high fence had been constructed.
Upon arrival one of the officers went to the front of the building and the other walked down Plainfield Avenue toward the rear. On reaching the fence gate he shook it to discover if it was open. This shaking apparently disturbed some bottles inside, and almost immediately thereafter he saw three pairs of hands come to the top of the fence. The officer called for help as one man dropped to the street, crossed Plainfield Avenue and disappeared into a patch of trees, in spite of the warning shot fired over his head.
A second person jumped down from the fence; the officer called for him to halt and set out in pursuit. He chased *415 this individual, firing two warning shots and not losing sight of him at any time. About a hundred yards away from the fence the prowler stopped and gave himself up, saying, "You got me. You got me." This was O'Leary. He was dressed in a dark suit, felt hat and woolen shirt, and was wearing gloves.
O'Leary was taken back to the Center while the premises and the area within the fence and adjacent to the rear of the store building were searched.
Inspection of the rear door showed that the molding around it "had been pried loose," "there were several holes punched through the panel of the door" and "the door was ajar, partially ajar." About 10 to 15 feet away from the door they found a large crowbar and a blue barracks bag lying on the ground. The bag contained a hammer, a pinchbar, an iron bar, a cold chisel, four small chisels, five drills, a reamer, a Stilson wrench and a brace for a brace and bit. These articles were admitted in evidence over objection.
No proof was offered to show that anything was stolen or that any one had actually been inside the Center. Nor was there any evidence as to the condition of the rear entrance door before the alleged break, or whether the door opened inward or outward, or what "partially ajar" meant.
The statute (N.J.S. 2A:94-1) on which the first count of the indictment is predicated provides that:
"Any person who willfully or maliciously breaks and enters, or enters without breaking, any building * * * with intent to * * * steal, * * * is guilty of a high misdemeanor."
The essential elements to be proved to justify a conviction are:
(1) A breaking and entry into any building, or
(2) An entry without breaking
(3) Associated with an intent to steal.
A breaking consists of anything by which an obstruction to an entrance to a building by the body or a portion thereof is removed. Any act of physical force, however slight, *416 by which the obstruction to entering is removed is sufficient to constitute the breaking. 9 Am. Jur., Burglary, § 4, p. 241.
Entry is an indispensable element to the commission of the crime. 9 Am. Jur., Burglary, § 16; 12 C.J.S., Burglary, § 10(b); 3 Burdick, Law of Crime, § 704 (1946); 2 Wharton, Criminal Law (12th ed. 1932), § 987. An entry is accomplished by the intrusion into the building of any part of the body, an arm, a hand, a finger or a foot, or, in some instances, of an instrument, providing the instrument is inserted and utilized as a means of effectuating or attempting to effectuate the theft and not solely as a means of accomplishing the breaking into the building. Wharton, supra, § 989 et seq.; Miller, Criminal Law, § 108(c) (1934); 9 Am. Jur., supra, § 16; 12 C.J.S., supra, § 10(b); Burdick, supra, § 704a.
Corpus Juris Secundum, in discussing the use of an instrument, states the principle clearly:
"It is not even necessary, in order to constitute burglary, that the entry shall be by any part of the body; it may be by an instrument, as in the case where a hook or other instrument is put in with intent to take out goods, or a pistol or a gun with intent to kill; but it is necessary that the instrument shall be put within the house, and that it shall be inserted for the immediate purpose of committing the felony or aiding in its commission, and not merely for the purpose of making an opening to admit the hand or body, or in other words for the sole purpose of breaking."
Compare State v. Crawford, 8 N.D. 539, 80 N.W. 193, 46 L.R.A. 312 (Sup. Ct. 1899).
In the present case, while the facts and circumstances are sufficient to create a jury question as to the element of breaking, in our judgment they are insufficient to prove an entry as it has been defined. The evidence is entirely consistent with the view that the intruders were frightened away by the appearance of the police before they had effected an entry. Nothing was stolen and no conditions existed which supply reasonable inferences that any part of a person's body intruded into the building or that any instrument was inserted *417 for the purpose of consummating a theft as distinguished from a mere breaking. Cf. State v. Grubaugh, 54 N. Mex. 272, 221 P.2d 1055 (Sup. Ct. 1950); Wharton, supra. § 994.
The insufficiency of the evidence in this respect requires a reversal of the judgment of conviction and a remand for retrial. State v. Lamoreaux, 20 N.J. Super. 65 (App. Div. 1952).
Since the matter is to be retried, it seems advisable to note that the charge of the court in such cases should advise the jury as to the essential elements of the crime which the State is obliged to prove, and should define those elements.
We feel also that in such cases, particularly where the proof is of the tenor exhibited by this record, the jury ought to be instructed that if commission of the crime specifically charged is not made out beyond a reasonable doubt, they should turn to a consideration of whether an attempt to commit the crime has been established. It is fundamental that "A party indicted for a crime may be convicted of any offense of a lower grade, provided such lower offense is included within the description of the indictment." State v. Jankowski, 82 N.J.L. 229, 233 (Sup. Ct. 1912), affirmed 83 N.J.L. 796 (E. & A. 1912); State v. Schwarzbach, 84 N.J.L. 268 (E. & A. 1913); R.R. 3:7-9(c); N.J.S. 2A:85-5.
An attempt to commit a crime is an act done with intent to commit it beyond mere preparation but falling short of its actual commission.
"The overt act or acts must be such as will apparently result, in the usual and natural course of events, if not hindered by extraneous causes, in the commission of the crime itself. * * *" State v. Schwarzbach, supra, at p. 270.
No error is discerned in the admission in evidence of the tools found at the scene. Obviously they were admissible in support of the second count of the indictment. When that count was dismissed there was no motion to strike them *418 from the record. But we do not reject the claimed error on any such strictly technical ground. The proximity of the crowbar and the bag of tools to the rear door, the nature of the damage to the door, particularly to the molding, in association with the other conditions and circumstances, all combine to give the tools a relevant probative quality which renders them admissible.
Reversed.