RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0126p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

*v.*

No. 18-5356

DAVID EARL BROWN,

*Defendant-Appellee*.

───────────────

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
Nos. 1:06-cr-00078-1; 1:12-cv-00362—Harry S. Mattice, Jr., District Judge.

Decided and Filed: April 24, 2020

Before: SUHRHEINRICH, BUSH, and MURPHY, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:** Debra A. Breneman, Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellant. Erin P. Rust, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Chattanooga, Tennessee, for Appellee.

───────────────

## OPINION

───────────────

MURPHY, Circuit Judge. The Armed Career Criminal Act increases the sentence for felons who possess firearms from a 10-year maximum to a 15-year minimum if the defendant has three prior convictions that qualify as "violent felonies." 18 U.S.C. § 924(a)(2), (e). The Act defines "violent felony" to include "burglary." *Id.* § 924(e)(2)(B)(ii). The Supreme Court has long used a "categorical approach" to determine whether a state burglary conviction counts as a conviction for "burglary" under the Act—an approach some Justices have come to recognize is

"difficult to apply." *Quarles v. United States*, 139 S. Ct. 1872, 1881 (2019) (Thomas, J., concurring); *cf. United States v. Burris*, 912 F.3d 386, 390 (6th Cir. 2019) (en banc) (principal op.). This case shows how the difficulties answering this esoteric legal question can affect real people's lives. In 2007 a jury convicted David Brown of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). *United States v. Brown*, 443 F. App'x 956, 958 (6th Cir. 2011). At that time our caselaw treated Brown's three Tennessee aggravated-burglary convictions as violent felonies, so we upheld his 180-month sentence under the Act. *Id.* at 959–60. Years later the parties agreed that changes to our caselaw showed that Brown's burglary convictions did not, in fact, qualify as violent felonies. The district court thus granted Brown relief under 28 U.S.C. § 2255. He was resentenced and released from prison. Since his release, however, the Supreme Court has intervened and changed our caselaw yet again. While Brown says that his convictions still do not qualify as violent felonies, we disagree. So we must reverse the district court's decision granting Brown relief under § 2255 and remand for the court to reinstate his original sentence.

I

The Armed Career Criminal Act defines the phrase "violent felony" to mean, among other things, "burglary." 18 U.S.C. § 924(e)(2)(B)(ii). To decide if a defendant's prior conviction under a state's burglary statute qualifies as a conviction for "burglary" under this federal Act, the Supreme Court adopted the so-called "categorical approach" in *Taylor v. United States*, 495 U.S. 575 (1990). *See United States v. Stitt*, 139 S. Ct. 399, 405 (2018). That approach directs courts to compare a state statute's elements of burglary to the elements of a "generic" definition of burglary that the Supreme Court adopted. *Id.* The Court in *Taylor* "defined the elements of generic 'burglary' as 'an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime.'" *Id.* at 405–06 (quoting *Taylor*, 495 U.S. at 598). If a state burglary statute sweeps in more conduct than this generic definition of the crime, convictions under the state statute will not qualify as convictions for "burglary" under the federal Act. *See Mathis v. United States*, 136 S. Ct. 2243, 2247–48 (2016).

These ground rules have been easier to articulate than apply. Our own experience with Tennessee's aggravated-burglary statute proves the point. Tennessee law defines "aggravated burglary" as "burglary of a habitation." Tenn. Code Ann. § 39-14-403(a). It goes on to define both "burglary" and "habitation." A person commits the crime of burglary under Tennessee law if that person, "without the effective consent of the property owner," takes one of four actions. *Id.* § 39-14-402(a)(1)–(4). Those actions include: (1) "[e]nter[ing] a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault"; (2) "[r]emain[ing] concealed, with the intent to commit a felony, theft or assault, in a building"; or (3) "[e]nter[ing] a building and commit[ting] or attempt[ing] to commit a felony, theft or assault." *Id.* § 39-14-402(a)(1)–(3). Tennessee law next defines "habitation" to cover, among other things, "any structure, including buildings, module units, mobile homes, trailers, and tents, which is designed or adapted for the overnight accommodation of persons[.]" *Id.* § 39-14-401(1)(A).

In 2007 we held that an aggravated-burglary conviction under Tennessee law categorically counts as a burglary under the Supreme Court's generic definition and so falls within the Armed Career Criminal Act. *United States v. Nance*, 481 F.3d 882, 888 (6th Cir. 2007). In 2017, after further guidance from the Supreme Court on its categorical approach, *see Mathis*, 136 S. Ct. at 2247–48; *Descamps v. United States*, 570 U.S. 254, 260–65 (2013), we reversed course. Our en banc court held that *Nance* had "misapplied the categorical approach" and that "a violation of Tennessee's aggravated-burglary statute is not categorically a violent felony." *United States v. Stitt*, 860 F.3d 854, 861 (6th Cir. 2017) (en banc). That state of things did not last long. In December 2018 the Supreme Court unanimously reversed our en banc decision. *Stitt*, 139 S. Ct. at 403–04. We have since decided that "*Nance*'s holding" that a Tennessee aggravated-burglary conviction categorically qualifies as a violent felony under the Armed Career Criminal Act "is once again the law of this circuit." *Brumbach v. United States*, 929 F.3d 791, 794 (6th Cir. 2019).

The uncertainty in our caselaw has translated into uncertainty in people's lives. David Brown's is unfortunately one of them. When a jury first convicted him in 2008 of being a felon in possession of a firearm, *Nance* was good law. The district court sentenced Brown to a 180-

month term as an armed career criminal because of his three Tennessee aggravated-burglary convictions. *Brown*, 443 F. App'x at 959–60. After our *Stitt* decision overruled *Nance*, however, the parties agreed in collateral proceedings under 28 U.S.C. § 2255 that Brown no longer qualified as an armed career criminal. In February 2018, the district court resentenced Brown to a 63-month term. He was immediately released from prison because he had already served longer than that term, and he has since completed a two-year term of supervised release. But the United States appealed the district court's grant of § 2255 relief to preserve its ability to argue for the original sentence if the Supreme Court overruled our *Stitt* decision. Now that the Supreme Court has done so, the United States asserts that we must reimpose Brown's original 180-month sentence.

## II

Because *Nance* is "once again the law of this circuit," we normally would vacate the district court's order granting relief under § 2255 and remand for the court to reimpose Brown's original sentence under the Armed Career Criminal Act. *See Brumbach*, 929 F.3d at 794–95. We have done just that for many other defendants in Brown's situation. *See, e.g.*, *Sesson v. United States*, 2020 WL 773049, at *2 (6th Cir. Jan. 30, 2020) (order); *White v. United States*, 2020 WL 773056, at *3 (6th Cir. Jan. 21, 2020) (order); *Barnett v. United States*, 2019 WL 7946346, at *2 (6th Cir. Dec. 12, 2019) (order); *Bearden v. United States*, 2019 WL 7882516, at *2 (Nov. 6, 2019) (order); *Greer v. United States*, 780 F. App'x 352, 353 (6th Cir. 2019); *United States v. Bateman*, 780 F. App'x 355, 357 (6th Cir. 2019); *Hill v. United States*, 2019 WL 7602328, at *1 (Oct. 10, 2019) (order); *United States v. Crutchfield*, 785 F. App'x 321, 324 (6th Cir. 2019); *United States v. Bawgus*, 782 F. App'x 408, 410 (6th Cir. 2019); *United States v. Hamilton*, 774 F. App'x 283, 283 (6th Cir. 2019) (per curiam); *Mann v. United States*, 773 F. App'x 308, 309 (6th Cir. 2019) (per curiam); *Bell v. United States*, 773 F. App'x 832, 833 (6th Cir. 2019).

Brown, however, offers four reasons why we should nevertheless affirm the district court's order granting him § 2255 relief. None distinguishes him from these other defendants.

A

Brown starts by suggesting that the United States forfeited its argument because it presented the argument in a perfunctory manner in the district court. We disagree. The government properly conceded that our en banc decision in *Stitt* foreclosed any argument that Brown's aggravated-burglary convictions were violent felonies, but preserved that issue for future review should the Supreme Court see things differently. At sentencing the district court itself recognized that the United States had "preserved [its] rights on *Stitt*." *Cf. United States v. Vonner*, 516 F.3d 382, 385, 391 (6th Cir. 2008) (en banc).

B

Turning to the merits, Brown argues that Tennessee aggravated burglary cannot qualify as a "burglary" under the Armed Career Criminal Act because, even after *Stitt*, Tennessee's version of burglary is still broader than the Supreme Court's generic version. That is so, Brown contends, because Tennessee's definition of "enter" for its burglary statute covers conduct that would qualify only as attempted burglary at common law. But, as Brown candidly concedes, we rejected this argument in *Brumbach*. 929 F.3d at 795. We did so because "a panel of this court cannot overrule *Nance*." *Id.* (citing *Salmi v. Sec'y of Health and Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985)). We have also repeatedly rejected the argument since *Brumbach*. *See, e.g.*, *United States v. Burrus*, 2020 WL 1862308, at *2 (6th Cir. Apr. 14, 2020); *White*, 2020 WL 773056, at *2. As in these other cases, Brown should direct his argument to our en banc court or the Supreme Court. Yet we think Brown's argument weighty enough to warrant a response from this court on the merits too.

Brown's argument hinges on a subtle common-law distinction. The common law defined burglary narrowly and required more elements than most modern burglary statutes: "At common law, burglary was confined to unlawful breaking and entering a dwelling at night with the intent to commit a felony." *Quarles v. United States*, 139 S. Ct. 1872, 1877 (2019). The common law nevertheless defined the "entry" element of this narrow crime broadly: "As for the entry, any the least degree of it, with any part of the body, or with an instrument held in the hand is sufficient." 4 William Blackstone, *Commentaries on the Law of England* 227 (1770).

Despite the breadth of a common-law "entry," some authorities eventually distinguished the entry of a *body part* (a foot or finger) from the entry of an *instrument* (a hook or firearm). "[I]f any part of the body be within the house, hand or foot; this at common law [was] sufficient[.]" 2 Edward H. East, *Pleas of the Crown* 490 (1806). A person thus "entered" a home merely by reaching an arm into it, whether that reach was designed to steal money or unlock a door. *See* Rollin M. Perkins, *Criminal Law* 155–56 (1957); *see also Rex v. Perkes*, 171 Eng. Rep. 1204, 1204 (1824). If only an instrument entered a home, by contrast, whether that entry sufficed depended on the reason for the entry. If a person used the instrument to commit the intended felony (for example, the person stuck a hook into the home to grab jewelry or a rifle into it to commit a robbery), both Edward Coke and William Blackstone treated the entry of that instrument alone as a burglary. Blackstone, *supra*, at 227; 3 Edward Coke, *Institutes of the Laws of England* 64 (1648). But later cases held that if a person used an instrument merely to undertake the "breaking" and did not also use it to commit the additional felony (for example, the person used a drill bit only to drill through a door), the entry of that instrument alone did not suffice. *See Rex v. Hughes*, 168 Eng. Rep. 305, 305 (1785); 1 William Hawkins, *Pleas of the Crown* 162 (6th ed. 1788).

Brown asks us to incorporate this "entry-by-instrument" distinction into the Armed Career Criminal Act's generic definition of burglary, which covers the unlawful "*entry into*, or remaining in, a building or structure, with intent to commit a crime." *Taylor*, 495 U.S. at 599 (emphasis added). He adds that Tennessee law defines "enter" to include not just the "[i]ntrusion of any part of the body" but also the "[i]ntrusion of any object in physical contact with the body or any object controlled by remote control, electronic or otherwise." Tenn. Code Ann. § 39-14-402(b). Brown thus thinks that Tennessee law adopts a broader view of "entry" than the common-law view because it reaches *any* object—even one used only to gain access to a home. (No state decision, as far as we are aware, has answered this question about § 39-14-402(b)'s scope, and caselaw from before that provision's enactment did not clearly answer the question either. *See State v. Crow*, 517 S.W.2d 753, 753–55 (Tenn. 1974).) Since Brown's view of this state definition would cover more than his generic definition of "entry," he concludes that Tennessee's definition of "enter" disqualifies all Tennessee burglary convictions from the Armed Career Criminal Act's reach.

We do not believe the Supreme Court would adopt Brown's view of generic "entry," so we need not decide whether he correctly interprets Tennessee law.  We begin where *Taylor* did.  The Court recognized that "common-law burglary is the core, or common denominator, of the contemporary usage of the term" under the Armed Career Criminal Act.  *Taylor*, 495 U.S. at 592; *cf. Stokeling v. United States*, 139 S. Ct. 544, 550–52 (2019).  Because the Act covers "at least the 'classic' common-law definition" of burglary, *Taylor*, 495 U.S. at 593, we know that Congress did not view the "entry" element as a demanding one.  Sticking a hand or finger through a window sufficed, *see Rex v. Davis*, 168 Eng. Rep. 917, 917–18 (1823); *Rex v. Bailey*, 168 Eng. Rep. 835, 835–36 (1818), as did drilling a hole into the walls of a granary to cause the grain to fall out, *see State v. Crawford*, 80 N.W. 193, 194–95 (N.D. 1899); *Walker v. State*, 63 Ala. 49, 51–52 (Ala. 1879).  Did Congress nevertheless mean to exclude any state burglary statute that also treated as a legally sufficient "entry" a burglar's insertion of a tool into a home merely to gain an entry point, not to commit the theft?  The Supreme Court's caselaw in this context leads us to think not.

For one thing, while *Taylor* recognized that the Act covered common-law burglary, it refused to read the Act as *limited* to the common-law rules.  *Taylor*, 495 U.S. at 593–96.  When Congress enacted the Armed Career Criminal Act in 1986, "the contemporary understanding of 'burglary' ha[d] diverged a long way from its commonlaw roots."  *Id.* at 593.  And the "arcane distinctions embedded in the common-law definition have little relevance to modern law enforcement concerns."  *Id.*  *Taylor* noted that Congress included burglary in the Act because it "viewed burglary as an inherently dangerous crime[.]"  *Stitt*, 139 S. Ct. at 406 (citing *Taylor*, 495 U.S. at 588).  A burglary "creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate."  *Quarles*, 139 S. Ct. at 1879 (quoting *Taylor*, 495 U.S. at 588).

Brown's entry-by-instrument distinction represents perhaps the prototypical "arcane distinction" that *Taylor* would disavow.  That distinction has no relevance to Congress's underlying reason for passing the Act.  *See id.*  Which burglar creates the greater risk of a violent encounter with a startled homeowner?  The one who reaches a finger between a window and an inner shutter before fleeing (which would qualify as an entry under Brown's common-law rule),

*cf. Davis*, 168 Eng. Rep. at 917–18, or the one who violently chops at a door with an axe that intrudes into the home (which would not qualify under his rule)?  *Cf. Taylor*, 495 U.S. at 594.

For another thing, we must interpret the word "burglary" in the Armed Career Criminal Act in light of its statutory context—as a universal term governing the entire country.  When *Taylor* proposed its generic burglary definition, it conceded that the "exact formulations" of the generic elements that it identified "var[ied]" from state to state.  495 U.S. at 598.  We think the Court meant for its definition to be capacious enough to cover the states' varied formulations of those elements.  *Cf. Quarles*, 139 S. Ct. at 1879.  As the Court has said for another provision of the Act, "[w]here, as here, the applicability of a federal criminal statute requires a state conviction, [the Court has] repeatedly declined to construe the statute in a way that would render it inapplicable in many States."  *Stokeling*, 139 S. Ct. at 552.  To be sure, *Taylor* did not give states carte blanche to redefine the crime of "burglary."  When disavowing such an anything-goes approach, *Taylor* highlighted how a California law defined burglary "so broadly" as to cover even "shoplifting" without *any unlawful* entry.  495 U.S. at 591; *see Descamps v. United States*, 570 U.S. 254, 264–65 (2013).  Setting aside idiosyncratic state laws, though, the Court's precedent instructs us not to interpret the word "burglary" in a way that would disqualify a significant number of state burglary statutes from the Act's reach.  The Court made this precise point in another context when it broadly interpreted the word "force" so as not to render a federal statute tied to state convictions "ineffectual in at least 10 States[.]"  *United States v. Castleman*, 572 U.S. 157, 167 (2014).

Here too, Brown's reading would mean that Congress immediately excluded several state burglary statutes from the Act's reach.  We cannot know the precise number of states because many had no caselaw on this technical topic at the time of the statute's enactment.  *Cf. Quarles*, 139 S. Ct. at 1878.  Even so, several states had already departed from Brown's entry-by-instrument distinction by allowing *any* entry of an instrument to satisfy the state burglary law's "entry" element.  Some state courts departed from Brown's distinction by broadly interpreting the word "entry."  A New Mexico court reasoned that "[b]urglary is an offense against the security of the building" and that this "security is breached by the penetration of an instrument into the building" no matter its purpose.  *State v. Tixier*, 551 P.2d 987, 989 (N.M. Ct. App.

1976); *see also Mullinnix v. State*, 338 S.E.2d 752, 753 (Ga. Ct. App. 1985). Likewise, a California court found "no plausible reason for holding that an entry by instrument must be for the purpose of removing property." *People v. Osegueda*, 210 Cal. Rptr. 182, 186 (Cal. App. Dep't Super. Ct. 1984); *People v. Davis*, 958 P.2d 1083, 1085–86 (Cal. 1998).

In other states, the legislatures changed their burglary laws by redefining "entry" broadly. In Texas, for example, the state courts had adopted Brown's entry-by-instrument distinction, but the legislature disapproved of that rule by defining entry to cover the intrusion of "any physical object connected with the body." Tex. Penal Code Ann. 30.02(b)(2) (1974); *Hayes v. State*, 656 S.W.2d 926, 927–28 (Tex. 1983). Likewise, Arizona's legislature defined entry to "mean[] the intrusion of any part of any instrument . . . inside the external boundaries of a structure or unit of real property." Ariz. Rev. Stat. § 13-1501 (1977); *see State v. Kindred*, 307 P.3d 1038, 1040–41 (Ariz. Ct. App. 2013). *See also* Utah Code Ann. § 76-6-201(4)(b) (1973); 11 Del. Code Ann. § 829(b) (1972); *cf. Bailey v. State*, 231 A.2d 469, 469–70 (Del. 1967). Congress likely did not mean to render the Act's burglary provision "ineffectual" in all of these states (and any others that would later adopt the same broad interpretation of "entry" after the Act's passage). *Castleman*, 572 U.S. at 167; *see Quarles*, 139 S. Ct. at 1870; *see also, e.g.*, *Adams v. Commonwealth*, 2013 WL 1701467, at *6 (Ky. Ct. App. Apr. 19, 2013).

Keep in mind, too, that Congress adopted a yes-or-no categorical approach for the Act. Its generic definition covers *all* convictions under a given state burglary statute or it covers *none* of them. *See Taylor* 495 U.S. at 599–601. That fact has also led the Supreme Court to adopt a generic definition of burglary that gives the states greater flexibility in how they define their state burglary offenses. *See Quarles*, 139 S. Ct. at 1879. If we adopted Brown's view, for example, a perhaps once-in-a-century burglary conviction for entering only with an instrument under a state statute that follows the broader entry-by-instrument rule would disqualify all convictions under that statute from the Armed Career Criminal Act's reach. That is so, even though the vast majority of the convictions under that statute would be for ordinary burglaries with ordinary entries. "That result not only would defy common sense, but also would defeat Congress' stated objective of imposing enhanced punishment on armed career criminals who have three prior convictions for burglary or other violent felonies." *Id.*

The Supreme Court's concern with giving states "breathing space" in defining their burglary offenses extends well beyond Brown's specific argument. Inventive lawyers can always imagine hypothetical convictions under which a state statute would categorically fall outside the Act because it does not comport with some nuanced common-law rule. *Cf. Moncrieffe v. Holder*, 569 U.S. 184, 205–06 (2013). Consider, for example, that Blackstone defined an entry as sufficient for burglary if the entry was "with an instrument *held in the hand*" (like a firearm reaching through a window). Blackstone, *supra*, at 227 (emphasis added). Should a bullet shot from *outside* a home qualify as an entry even though the bullet is not in the "hand" when it enters? Matthew Hale apparently had his doubts. *See* Perkins, *supra*, at 156 n.62. If Hale were right, should this fact exclude all statutes that count the bullet (or another object thrown into a home) as an entry? *See, e.g.*, *State v. Decker*, 365 P.3d 954, 958 (Ariz. Ct. App. 2016); *Commonwealth v. Cotto*, 752 N.E.2d 768, 771–72 (Mass. Ct. App. 2001); *State v. Williams*, 873 P.2d 471, 473–74 (Or. Ct. App. 1994).

Our continuing experience with Tennessee's burglary statute also shows why the Supreme Court would give states leeway in how they define burglary. We have repeatedly confronted different nuanced arguments for why that statute should categorically fall outside the Supreme Court's generic definition. Our en banc court initially held that no conviction under this statute could qualify as a burglary under the Act because the Tennessee statute covered an entry into a vehicle adopted for overnight accommodation, whereas the Act's generic definition of burglary required an entry into a building. *See United States v. Stitt*, 860 F.3d 854, 857–59 (6th Cir. 2017) (en banc). Immediately after the Supreme Court rejected that narrow reading of generic burglary, *see Stitt*, 139 S. Ct. at 403–04, Victor Stitt argued that the Tennessee statute was still too broad because its requirement that an entry be "without the effective consent of the owner" covered passive acts of deception, whereas the Act's generic definition of burglary required an affirmative act equivalent to a "breaking." And once we rejected that argument, *see United States v. Stitt*, 780 F. App'x 295, 298–301 (6th Cir. 2019), we are now told again that the statute is categorically overbroad (again disqualifying all convictions) because it defines "entry" too broadly.

Our experience with these types of continuing nuanced arguments has not been unique. The en banc Fifth Circuit held that Texas's burglary statute was categorically overbroad because it permitted a conviction when the intent to commit the crime came after the illegal entry or the decision to illegally remain. *See United States v. Herrold*, 883 F.3d 517, 531–36 (5th Cir. 2018) (en banc), *vacated by* 139 S. Ct. 2712 (2019). After the Supreme Court rejected that view, *see Quarles*, 139 S. Ct. at 1875, Michael Herrold made the argument that the Texas statute was still overbroad because it covered passive acts of entry. The Fifth Circuit rejected that argument too. *See United States v. Herrold*, 941 F.3d 173, 180–81 (5th Cir. 2019) (en banc). And it is safe to say that the Fifth Circuit will confront Brown's entry argument soon, since Texas also defines "entry" broadly. *See* Tex. Penal Code Ann. 30.02(b)(2); *Hayes*, 656 S.W.2d at 927–28. As these examples show, many state statutes might be read to depart from common-law burglary in some distinct way. If we used each departure to disqualify each statute, that circumscribed reading of the word "burglary" in the Act could have the net effect of disqualifying many states' burglary statutes from its coverage one-by-one. *See Quarles*, 139 S. Ct. at 1879.

All of this said, we concede that this case is different from the Supreme Court's two most recent decisions on this topic—*Quarles* and *Stitt*—in one important respect. In both cases, the Court said that most of the state decisions at the time of the Act's passage had incorporated into their burglary statutes the legal rule that the Court incorporated into the Act's generic burglary definition. *See Quarles*, 139 S. Ct. at 1878; *Stitt*, 139 S. Ct. at 406. The same cannot be said in this case. One nearly contemporaneous source suggested that the "majority of jurisdictions" that had examined this question had retained the narrower common-law rule and limited an "entry by instrument" "to the situation where the instrument is used to remove property from the premises or injure or threaten an occupant." *State v. Ison*, 744 P.2d 416, 419 (Alaska Ct. App. 1987); *see Foster v. State*, 220 So. 2d 406, 407 (Fla. Dist. Ct. App. 1969); *People v. Davis*, 279 N.E.2d 179, 181 (Ill. Ct. App. 1972); *State v. Liberty*, 280 A.2d 805, 808 (Me. 1971); *Commonwealth v. Burke*, 467 N.E.2d 846, 849 (Mass. 1984); *State v. Hodges*, 575 S.W.2d 769, 772 (Mo. Ct. App. 1978); *State v. O'Leary*, 107 A.2d 13, 15–16 (N.J. 1954); *People v. Tragni*, 449 N.Y.S.2d 923, 927–28 (N.Y. Sup. Ct. 1982); *see also* Nev. Rev. Stat. § 193.0145 (1973); Wash. Rev. Code § 9A.52.010(2) (1975). That rule was also identified as the law in well-known treatises.

*See, e.g.*, Wayne R. LaFave & Austin W. Scott, *Substantive Criminal Law* § 8.13(b), at 467–68 (1986).

This fact does not change our minds.  As we explained, other states had adopted the broader "minority" position on entries by instrument at the time of the Act's passage.  *Ison*, 744 P.2d at 419.  Congress would not have rendered the Act's burglary provision "ineffectual" in these states (and others that would later adopt their view).  *Castleman*, 572 U.S. at 167.  The other factors relied on by *Stitt* and *Quarles* also fully apply in this case, including "Congress' recognition of the dangers of burglary[] and Congress' stated objective of imposing increased punishment on armed career criminals who had committed prior burglaries."  *Quarles*, 139 S. Ct. at 1879.

The minority view also diverged only subtly from the majority view; it did not completely redefine the crime of "burglary."  *Cf. Taylor*, 495 U.S. at 591.  All courts agreed that an "entry" did not require much.  They held that "entry by instrument" could qualify as burglary when a burglar used the instrument to commit the intended felony, *see Ison*, 744 P.2d at 419, and they held that the entry of any body part, such as a hand, sufficed, *see Burke*, 467 N.E.2d at 849.  The minority view also departed from the traditional entry-by-instrument distinction for a reason relevant to the Supreme Court's generic definition of burglary.  By ensuring that a burglar used an instrument for more than gaining access to a home, that traditional distinction kept burglary's "breaking" element separate from its "entry" element.  *See Hughes*, 168 Eng. Rep. at 305–06; *see, e.g.*, *Burke*, 467 N.E.2d at 847–50; *O'Leary*, 107 A.2d at 15–16; *Crawford*, 80 N.W. at 194–95.  Courts that disavowed this distinction did so partially because they had done away with any separate "breaking" element.  *See Tixier*, 551 P.2d at 989.  By the time of the Act's passage, most states had also done away with that element.  *See Taylor*, 495 U.S. at 593.  The Supreme Court thus refused to incorporate a "breaking" element into the Act's generic definition, *id.* at 598, and courts need not worry about keeping it distinct from the generic definition's "entry" element.

In sum, if several state burglary statutes had modestly departed from a common-law rule of burglary when Congress passed the Armed Career Criminal Act, courts should interpret the Act's generic definition of burglary to cover those state statutes.  And because the broader view

of "entry by instrument" falls within this principle, the Act's generic definition should encompass that broader entry-by-instrument rule, not Brown's narrower one.

C

Brown next provides another reason why Tennessee aggravated burglary should not qualify as a "burglary" under the Armed Career Criminal Act. Generic burglary, Brown argues, requires a defendant to have an "intent to commit a crime" when the defendant unlawfully enters or remains in a building. *See Taylor*, 495 U.S. at 599. But Brown says that one of the ways in which a person can commit Tennessee burglary—"[e]nter[ing] a building and commit[ting] or attempt[ing] to commit a felony, theft or assault," Tenn. Code Ann. § 39-14-402(a)(3)—requires only *reckless* conduct. This argument provides Brown no grounds for relief either.

As an initial matter, it is not clear under our precedent that we may rely on this new argument to conclude that all Tennessee aggravated-burglary convictions fall outside the Act. Our cases have "held, broadly, that 'convictions under subsections (a)(1), (a)(2), and (a)(3)'" of the Tennessee burglary statute "'fit within the generic definition of burglary and are therefore violent felonies'" for purposes of the Armed Career Criminal Act. *Brumbach*, 929 F.3d at 794 (quoting *United States v. Ferguson*, 868 F.3d 514, 515 (6th Cir. 2017)). And we have previously rejected other attempts to bring new arguments challenging those prior holdings. *See id.* at 795. If our cases prohibited Brian Brumbach from raising his new "entry" argument, those cases may well foreclose David Brown from raising his new "intent" argument.

Regardless, this argument fails for a case-specific reason that we highlighted on Brown's direct appeal. *Brown*, 443 F. App'x at 959–60. Tennessee burglary convictions are not all the same, and Tennessee's burglary statute is divisible. It criminalizes four different offenses set out in subsections (a)(1), (a)(2), (a)(3), and (a)(4). Tenn. Code. Ann. §§ 39-14-402(a), 39-14-403; *see United States v. Frazier*, 742 F. App'x 81, 84 (6th Cir. 2018). Brown was indicted for and convicted of violating the (a)(1) version, not the (a)(3) version. Although his indictments do not explicitly cite a subsection, each charged that Brown "did unlawfully enter the habitation of [his victims] without [their] effective consent, not open to the public, with intent to commit theft, in violation of T.C.A. 39-14-402[.]" That language mirrors the language of § 39-14-402(a)(1).

Brown thus was convicted of violating the (a)(1) version of Tennessee aggravated burglary. *See United States v. Hibbit*, 514 F. App'x 594, 597–98 (6th Cir. 2013). That (a)(1) version contains the "intent" requirement that Brown claims the (a)(3) version lacks: It forbids a person, without "the effective consent of the property owner," to "[e]nter[] a [habitation] (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault." Tenn. Code. Ann. §§ 39-14-402(a)(1), 39-14-403. This text also tracks the Supreme Court's definition of generic burglary: the "unlawful or unprivileged entry into" "a building or other structure, with intent to commit a crime." *Stitt*, 139 S. Ct. at 405–06 (citation omitted). So Brown's aggravated-burglary convictions qualified as violent felonies under the Armed Career Criminal Act.

D

The Armed Career Criminal Act applies only if a defendant has three prior convictions for violent felonies that were "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). Brown lastly makes a broad argument and a narrow argument for the claim that his three burglary convictions were not committed on occasions different from each other. He broadly argues that we may never look to the dates and locations listed in his state-court records to decide whether a defendant committed the burglaries on different occasions. That is so, he says, because those facts do not qualify as elements of the crime of burglary in Tennessee. And he interprets *Shepard v. United States*, 544 U.S. 13 (2005), to allow courts to examine state-court records in this context *only* to identify the elements of the defendant's crime, not to identify time and location facts. As Brown again candidly concedes, our precedent forecloses this broad argument, at least as to state-court charging documents. *See United States v. Hennessee*, 932 F.3d 437, 444 (6th Cir. 2019). So he must also direct this argument either to our en banc court or to the Supreme Court. *See Greer*, 780 F. App'x at 353.

Brown more narrowly argues that his state-court records do not show that his three burglaries happened on different occasions. The United States says that he procedurally defaulted this argument, but we find it easier to resolve Brown's claim on the merits. *Cf. Storey v. Vasbinder*, 657 F.3d 372, 380 (6th Cir. 2011). A petitioner bears the burden of proof in a § 2255 proceeding, so Brown must show by a preponderance of the evidence that his three

aggravated-burglary convictions did not occur on different occasions. *Packett v. United States*, 738 F. App'x 348, 352 (6th Cir. 2018); *Potter v. United States*, 887 F.3d 785, 787–88 (6th Cir. 2018). This he cannot do.

As Brown concedes, we may look to his state-court indictments to decide whether his burglaries were committed on different occasions. *See United States v. King*, 853 F.3d 267, 275–76 (6th Cir. 2017). In one indictment, Brown alone was charged with burglarizing Claude Suttles's residence in August 1991 and James Goins's residence in December 1991. That indictment indicates that Brown stole a VCR and TV from Goins. In a second indictment, Brown and another person were charged with burglarizing Teresa Chambless's residence on December 27, 1991. That indictment indicates that Brown and the other person stole a weed eater, lantern, and heaters from Chambless. The "terms of the charging document[s]," *id.* at 276 (citation omitted), thus show that the two December 1991 burglaries happened on different occasions: the burglaries were of different residences, the items stolen from those residences were different, and one burglary was committed with another person while the other was committed alone. *See Hennessee*, 932 F.3d at 444–45; *United States v. Southers*, 866 F.3d 364, 369–70 (6th Cir. 2017). Brown thus cannot meet his burden of proving that two of his convictions occurred on the same occasion.

\* \* \*

We grant Brown's motion to take judicial notice, vacate the district court's order granting him release, and remand with instructions to reinstate his original sentence.