**STATE of Tennessee, Petitioner,**

**v.**

**Casper CROW, Respondent.**

Supreme Court of Tennessee.

Nov. 12, 1974.

R. Jackson Rose, Asst. Atty. Gen., Nashville, (R. A. Ashley, Jr., Atty. Gen., of counsel), for petitioner.

Frank L. Slaughter, J. Klyne Lauderback, Jr., Bristol, (Slaughter, Jackson & Pectol, Bristol), for respondent.

### OPINION

FONES, Chief Justice.

Casper Crow was convicted of third degree burglary and sentenced to not less than three nor more than four years. On his appeal, the majority of a panel of the Court of Criminal Appeals overruled all of his assignments of error, but raised of its own motion the question of whether or not there was any evidence of an entry, found none, and reduced the offense to attempt to commit a felony, to wit, third degree burglary. Judge Walker dissented. The State petitioned this Court for the writ of certiorari, assigning that action of the Court of Criminal Appeals as error. We granted the writ and have heard oral argument.

By statutory definition, third degree burglary is the breaking and entering into a business house, outhouse, or any other house of another, other than a dwelling house, with the intent to commit a felony. T.C.A. § 39–904.

Entry is an indispensable element in the crime of burglary, but, to prove entry, it is not necessary to show that the defendant's whole body made an entrance into the house. The following quote from

Wharton's Criminal Law and Procedure, Anderson Edition, Sec. 421, states the law relevant to the present inquiry:

"Any penetration, however slight, of the space within the house by the defendant, or by any part of his body or by any instrument inserted for the purpose of perpetrating a felony therein, is a sufficient entry."

Cases holding entry of the hand or an instrument to be sufficient to supply the element of entry, after breaking, to make out the crime of burglary, are cited in 13 Am. Jur.2d, Burglary § 10 and 12 C.J.S. Burglary § 10.

■ The evidence relevant to the issue of whether or not there was an entry in the instant case follows:

An officer of the Bristol Police Department, while on patrol about 2:20 A.M., on May 3, 1971, observed that the glass had been broken out of a door to the Volunteer Lounge. He got out of his patrol car and examined the door and found pry marks. He returned to his patrol car, reported the discovery of a break, and asked for assistance. He heard a noise behind him and turned and observed the defendant raising up from a bush approximately six feet from the door. Defendant had a tire tool in his right hand and started advancing toward the officer. The officer drew his pistol and told him to stop and drop the tire tool. Defendant threw the tire tool up in the bushes. The officer put his gun in his holster and told defendant to put his hands on the car; whereupon, the defendant reached for the officer. The two wrestled until a second policeman arrived. The defendant was wearing gloves at the time and, upon being searched, a screw driver and knife were found upon his person, and a flashlight was found either on his person or at the scene. The pry marks were around the lock. The owner of the Lounge testified that all of the plate glass was broken out of the door, except a few splintered areas around the bottom; that it was necessary to use a key to unlock the

door on the outside or the inside; that behind the glass, on the inside, two layers of burlap had been attached to the door frame with screws, and that the burlap had been split about 8 to 10 inches in the area of the lock; that it would be necessary to reach through the burlap in order to reach the inside locking mechanism of the door; that from the outside there was no way to tell whether the door had a flip lock or whether it required a key without reaching through the broken glass door and the burlap. Defendant's car was found on a Holiday Inn parking lot about a block from the Lounge.

After the defendant had been advised of his rights, one of the Bristol officers testified as follows with respect to his conversation with defendant:

"A. I asked him why he had broken into the Volunteer Lounge, and he said, 'You can't prove that I did.' And I said, 'Well, I believe that I can.' And he said, 'Well, I didn't get anything,' and I said, 'Well, that will be determined later on this morning, whether you took anything from the building or not.' I said, 'What did you and the officer have the trouble there at the door for?' I said, 'Why were you going to hit him with a crowbar?' And he said, 'Well, I should have killed him.' I asked him why he hadn't signed his fingerprint card, and he said, 'I don't have another damned thing to say to you.' That was the end of our conversation."

The defendant did not testify or offer any proof.

The trial judge correctly charged the jury that they would have to find, beyond a reasonable doubt, that the defendant broke and entered the building, and further correctly charged the jury as follows:

"In considering whether a person has entered after breaking, the Court charges you that a person may enter by inserting the hand or the finger, or an instrument held in the hand, when such is done with the intent to commit a felo-

ny therein, and proof of entry of the entire body is not required."

From the circumstantial evidence in this case, the jury could have found that the defendant broke the glass and split the burlap with the knife, tire tool or screw driver, and thus entered the business house with an instrument, and/or that he reached his gloved hand through the burlap in an effort to find a flip lock that would admit him to the premises; that being unable to open the door, without a key, he had retreated to the bush when the patrol car appeared. In our opinion, the evidence is sufficient to sustain a finding by the jury that an entry, with intent to commit a felony, actually occurred.

The judgment of the Court of Criminal Appeals is reversed and the conviction is affirmed.

COOPER, HENRY, BROCK and HARBISON, JJ., concur.