IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 9, 2013

**STATE OF TENNESSEE v. DWAYLAN DUPREE HOUSE**

**Appeal from the Circuit Court for Lauderdale County**
**No. 9123      Joseph H. Walker, III, Judge**

**No. W2012-01272-CCA-R3-CD  -  Filed June 21, 2013**

The Defendant, Dwaylan Dupree House, contends (1) that the evidence presented at trial was insufficient to support his jury convictions, (2) that the trial court erred in denying his motion for judgment of acquittal and motion for new trial, and (3) that the trial court's imposition of a ten-year sentence and $2,882.22 in restitution was excessive. Following our review of the record and the applicable authorities, we affirm the Defendant's convictions for vandalism and burglary, reverse the sentence imposed, and remand for resentencing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and JEFFREY S. BIVINS, JJ., joined.

Robert L. Thomas, Jackson, Tennessee, for the appellant, Dwaylan Dupree House.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Julie K. Pillow, Assistant District Attorney General; for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

The Defendant was indicted on October 3, 2011, for burglary of a building and vandalism, over $1,000 but less than $10,000, both Class D felonies. A trial was held, and the following evidence was presented.

Dwayne Johnson testified that he had been an employee with the United States

Department of Agriculture (USDA), Natural Resources Conservation, for thirty-seven years. He testified that he was the sole employee in his office building, the USDA Service Center, on June 16, 2011, when the instant offenses occurred. Mr. Johnson explained that he was working late and was waiting on his wife to pick him up when it began to storm outside. The wind and rain increased, and the lights went out. The emergency lights, two spotlight-like lights at each end of the approximately 100 foot-long hallway, came on shortly thereafter. Some time later, he heard a crash-like noise. Mr. Johnson said that he assumed that the storm had knocked over some garbage cans located in the back of his building and that he did not think much of it. Then, Mr. Johnson heard a "rattle racket" sound and thought it was strange, so he decided to go check it out. Investigating the sound, he proceeded down the hallway of his building, which he shared with the Farm Services Agency (FSA). After walking approximately seventy-five feet down the hallway, on the FSA side of the building, he saw a window; the blinds were moving, and he saw a leg – from the thigh down – coming through the broken window. He explained that he decided to leave the building to call the police because he was afraid that he would be heard if he called the police from inside. In exiting the building, he paused at the door to scan his surroundings and ensure that no one else was outside. He said that there was a white car parked directly in front of the steel door; the headlights were not on nor was the engine running, and no one was inside the car. He did not recognize the car as belonging to any one employed at the USDA or surrounding buildings. Mr. Johnson explained that the only other cars left in the parking lot were government vehicles that the employees were not allowed to take home.

Mr. Johnson walked to a funeral home, located adjacent to the USDA building, and called 911. Minutes later, a Ripley police car arrived, and the officer spotlighted the building. Mr. Johnson did not approach the officer because he did not think it was a good idea; instead, he observed the USDA building from the awning area of the funeral home. Mr. Johnson saw the suspect exit the FSA side door. The suspect stood for a few seconds, looking around, then he got in the white car and came in Mr. Johnson's direction. The white car came around the back of the building, and the officer began trailing the car. Mr. Johnson said that the officer pulled beside the car, and after a short conversation, the white car left. A second officer arrived, and Mr. Johnson did approach this officer, informing him that the burglary suspect was the man in the white car and that he was getting away. The officers attempted to catch up with the white car but were unable to do so. When the officers returned, they, along with Mr. Johnson and the owner of the building, walked through the premises to identify any damage: the window was broken, and a fire-proof file cabinet labeled "deposits" had also been "broken into." The file cabinet did not have any cash in it but contained bank account numbers, social security numbers (SSNs), etc.

Mr. Johnson testified that he was certain that the man in the white car was the one who broke into the building because he had "full view" and never lost sight of the suspect

once the man left the building. He described the suspect as an African-American man, slim build. Mr. Johnson testified that he never gave anyone consent to break into the building or vandalize the cabinet.

Officer Renaldo Maiden, employed with the Ripley Police Department, testified that he was the first officer to arrive at the USDA building after being dispatched to a robbery in progress. He spotlighted the building and saw taillights. Officer Maiden pulled behind the car, activated his blue lights, and ran the tag number. The computers were down, so he did not get a response on the tag, but he called it in. He then pulled up to the car and spoke with the driver, later identified as the Defendant. According to Officer Maiden, the Defendant said that "he was just coming by to pick up his daughter's vehicle because she didn't want to drive in the rain." Officer Maiden asked him what was going on, and the Defendant said, "I don't know. It's something going on in the back back there, somebody tried to break in or whatever." The Defendant told Officer Maiden that he did not have any identification because he had just "got up"; he explained, "It started storming, she said she didn't want to drive in the rain, and I just come down here to pick up -- just to get the vehicle." Officer Maiden thanked the Defendant and allowed him to leave. Officer Maiden then drove around to the back of the building to meet his lieutenant who had arrived on the scene during their conversation.

Officer Maiden testified that he did not know the Defendant was the burglary suspect until after he spoke with his lieutenant. He attempted to find the Defendant, thereafter, but was unable to do so. Officer Maiden testified that the Defendant was the only person he saw around the area, that the Defendant was the only person in the car, and that there was "no question" that the Defendant was the driver of the white car. Using the tag number Officer Maiden had reported on the night of the burglary, the car was later identified as belonging to a female named Ms. Blue, who Officer Maiden believed was incarcerated at the time of the burglary. The Defendant was identified as Ms. Blue's stepfather.

Donna Neal, a program technician at FSA located in the USDA building, testified that FSA's Fire King four-drawer lateral cabinet was damaged and a window was broken during the June 16, 2011 burglary. According to Ms. Neal, the file cabinet was labeled "direct deposits" and stored names, addresses, SSNs, and bank and savings account numbers; the cabinet was locked at all times when it was not in use. She testified that the file cabinet could not be repaired and that it cost $2,882.22 to replace. Ms. Neal also testified that she had seen the Defendant at the office prior to the burglary. He had come in to see if anyone was interested in his car cleaning services approximately three to four weeks prior to the burglary and left a sign containing his contact information and advertising that service. Ms. Neal further testified that she saw the Defendant at the office again on the day of the burglary. He again asked about interest in his car cleaning services. Ms. Neal said that she

had a deposit on her desk at that time and that he asked her for change, to which she explained that she did not have "that type of change." She testified that she had not seen the Defendant since his visit on the day of the burglary.

The jury found the Defendant guilty of the offenses as charged.

A sentencing hearing was held in which the trial court considered letters of support from the Defendant's mother and his pastor. The Defendant also gave a statement in which he apologized and took full responsibility for his actions. He asked the trial court not to allow him to "be a product of recidivism" and requested its consideration of an alternative sentence. The Defendant said that he would pay for all the damages sustained as a result of the burglary.

The trial court found that the Defendant had five prior convictions and, as such, he must be sentenced as a persistent offender. Additionally, the trial court found that

[t]he Defendant has, in enhancement, convictions in addition to those necessary to establish the appropriate range.

In mitigation, that he didn't cause any harm to anyone.

And also I have read the statement submitted by Reverend Reese and the defendant's mother, Ms. Meux, and they both feel that he, in mitigation, that he has a potential for rehabilitation with good moral character.

The trial court sentenced the Defendant to serve ten years on each count, concurrent, but the instant sentence was to be served consecutively to a prior Hardeman County conviction because the Defendant was on parole when the instant offenses were committed. Granting alternative sentencing, the trial court "suspend[ed] a portion of the time, suspend eight years, requir[ing] 24 months service on the sentences that are consecutive to the parole violation." The trial court's sentencing order also provided that "[i]nformation explaining the sentence imposed [wa]s available upon request. T.C.A. 40-35-210." The Defendant was ordered to pay restitution in Count 1 to Big Properties in the amount of $350 and, in Count 2, $2882.22 to the U.S. Government.

ANALYSIS

In this appeal, the Defendant contends (1) that the evidence presented at trial was insufficient to support his jury convictions, (2) that the trial court "failed to act as thirteenth

juror" in denying his motion for judgment of acquittal and motion for new trial because of said deficiencies in the evidence, and (3) that the trial court's imposition of a ten-year sentence and $2,882.22 in restitution was excessive.[1] The State responds that the trial court properly denied the Defendant's motions for judgment of acquittal and new trial because the evidence presented at trial was sufficient to support his convictions and that the mid-range sentence imposed by the trial court was not excessive.

## *I. Sufficiency of the Evidence*

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); see also State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

Our supreme court recently clarified that circumstantial evidence is as probative as direct evidence. State v. Dorantes, 331 S.W.3d 370, 379-81 (Tenn. 2011). In doing so, the supreme court rejected the previous standard which "required the State to prove facts and circumstances so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." Id. at 380 (quoting State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971)) (quotation marks omitted). Instead, "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Id. at 381. To that end, the duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all

---

[1]Because the Defendant did not support his restitution challenge with argument or citations to the record or any legal authority supporting his position that the imposed amount is excessive, he has waived appellate review of this issue. Tenn. R. Crim. App. 10(b). Furthermore, we note that at sentencing, the Defendant stated that he would pay restitution for all damages caused by the burglary.

reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

Rule 29 of the Tennessee Rules of Criminal Procedure governs motions for judgments of acquittal. It provides, in relevant part, as follows:

> On defendant's motion or its own initiative, the court shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, presentment, or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

Tenn. R. Crim. P. 29(b). This rule gives the trial court authority to direct a judgment of acquittal, either at the close of the State's proof or at the conclusion of all the evidence, when the evidence is insufficient to support a conviction. See State v. Gilley, 297 S.W.3d 739, 762 (Tenn. Crim. App. 2008). In determining whether to grant a motion for judgment of acquittal, "the trial court must favor the opponent of the motion with the strongest legitimate view of the evidence, including all reasonable inferences, and discard any countervailing evidence." Id. (citing Hill v. State, 470 S.W.2d 853, 858 (1971)). The trial court applies the same standard employed on appeal when analyzing the sufficiency of the evidence. Id.

*A. Burglary Conviction*

Burglary is defined in Tennessee Code Annotated section 39-14-402. It states, in relevant part,

> (a) A person commits burglary who, without the effective consent of the property owner:
>
> > (1) Enters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault;
>
> . . . .
>
> (c) Burglary under subdivision (a)(1), (2) or (3) is a Class D felony.

Tenn. Code Ann. §39-14-402(a)(1), (c). Entry is defined as an "[i]ntrusion of any part of the body; or [i]ntrusion of any object in physical contact with the body or any object controlled by remote control, electronic or otherwise. See State v. Johnson, M2010-02664-CCA-R3CD, 2012 WL 1648211, at *4 (Tenn. Crim. App. May 10, 2012)(proof that a defendant's whole body made entrance into the building is not necessary; entry of a hand or an instrument is

sufficient)(citing State v. Crow, 517 S.W.2d 753, 754 (Tenn. 1974)). The intentional element required for the offense of burglary may be established by circumstantial evidence. Johnson, 2012 WL 1648211, at *4 (citing State v. Holland, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993); Bollin v. State, 486 S.W.2d 293, 296 (Tenn. Crim. App. 1972). "Generally, when a person enters an occupied dwelling which contains valuable property, without the permission of the owner, a jury is entitled to infer that the entry was made with the intent to commit a theft." State v. Michael A. Braswell, No. 01C01-9807-CC-00304, 1999 WL 994043, at *7 (Tenn. Crim. App. Oct. 29, 1999)(citing State v. Chrisman, 885 S.W.2d 834, 838 (Tenn. Crim. App. 1994); State v. Burkley, 804 S.W.2d 458, 460 (Tenn. Crim. App. 1990)); see also Bollin, 486 S.W.2d at 296.

The evidence presented at trial showed that Mr. Johnson observed a man matching the Defendant's description entering the USDA building via a window, at which time Mr. Johnson called the police. He then observed this man get into a white car, the only non-government vehicle on the premises, and drive toward the street. Next, Mr. Johnson saw Officer Maiden pull this white car over and converse with the driver. Unaware that the driver of the white car was the burglary suspect, Officer Maiden let him go but did call in the tag number on the car. The car was identified as belonging to Ms. Blue, who was identified as the Defendant's step-daughter. Both Officer Maiden and Mr. Johnson testified that driver of the white car was the only other person on the premises and that he was the sole individual in the white car. Officer Maiden also testified that the Defendant was the driver of the white car on the night in question. The proof further established that the Defendant did not have permission to enter the building and that a file cabinet valued over $2,000 was damaged. It is for these reasons that we conclude that the evidence was sufficient to support the Defendant's conviction for burglary of a building and that the trial court did not err in denying the Defendant's motion for judgment of acquittal.

*B. Vandalism Conviction*

Vandalism is defined in Tennessee Code Annotated section 39-14-408. It states, in relevant part,

> (a) Any person who knowingly causes damage to or the destruction of any real or personal property of another or of the state, the United States, any county, city, or town knowing that the person does not have the owner's effective consent is guilty of an offense under this section.

Tenn. Code Ann. § 39-14-408(a). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b). Whether a defendant acts knowingly is a question

of fact for the jury. See State v. Inlow, 52 S.W.3d 101, 104-05 (Tenn. Crim. App. 2000).

In a light most favorable to the State, the evidence showed that the Defendant burglarized the USDA building, breaking a window on the FSA side of the building and entering the room in which the file cabinet labeled "direct deposits" was located. The file cabinet at issue had been pried open, was irreparable, and cost $2,882.22 to replace. The Defendant had visited the USDA building three to four weeks before the burglary and again on the day of the burglary. During the latter visit, he observed Ms. Neal processing a deposit on her desk and asked her for change. Despite the Defendant visiting her office twice prior to the burglary, Ms. Neal had not seen him again prior to trial. For the foregoing reasons, we conclude that the evidence was sufficient for a rational trier of fact to conclude that the Defendant was guilty of vandalism, over $1,000, and that the trial court's denial of the Defendant's motion for judgment of acquittal was not in error.

*II. Thirteenth Juror*

Tennessee Rule of Criminal Procedure 33(d) provides that "[t]he trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence." This is the modern equivalent of the thirteenth juror rule and "imposes upon a trial court judge the mandatory duty to serve as the thirteenth juror in every criminal case, and that approval by the trial judge of the jury's verdict as the thirteenth juror is a necessary prerequisite to imposition of a valid judgment." State v. Biggs, 218 S.W.3d 643, 653 (Tenn. Crim. App. 2006) (quoting State v. Carter, 896 S.W.2d 119, 122 (Tenn. 1995)) (internal quotation marks omitted). "[W]hen a trial court overrules a motion for new trial without comment, an appellate court may presume that the trial court approved the verdict as the thirteenth juror." Id. (citing Carter, 896 S.W.2d at 122). However, "where the record contains statements by the trial judge expressing dissatisfaction or disagreement with the weight of the evidence or the jury's verdict, or statements indicating that the trial court absolved itself of its responsibility to act as the thirteenth juror, an appellate court may reverse the trial court's judgment." Carter, 896 S.W.2d at 122.

Here, the trial court denied the Defendant's motion for new trial without making any comment. As such, there is no basis for the Defendant's assertion that the trial court failed to act as thirteenth juror. The record is devoid of any indication that the trial court did not agree with the verdict, and therefore, we presume that the trial court approved the verdict. See Biggs, 218 S.W.3d at 653. Accordingly, we conclude that the trial court properly fulfilled its duties as the thirteenth juror in this case.

-8-

*II. Sentencing*

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b). To facilitate appellate review, "it is critical that trial courts adhere to the statutory requirement set forth in Tennessee Code Annotated section 40-35-210(e)" and articulate in the record its reasons for imposing the specific sentence. See State v. Bise, 380 S.W.3d 682, 705 n.41 (Tenn. 2012).

Currently, upon a challenge to the sentence imposed, it is the duty of this court to analyze the issues under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707. Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," Tennessee Code Annotated section 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the law," Tennessee Code Annotated section 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," Tennessee Code Annotated section 40-35-103(5). State v. Carter, 254 S.W.3d 335, 344 (Tenn. 2008). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The 2005 amendments also rendered advisory the manner in which the trial court selects a sentence within the appropriate range, allowing the trial court to be guided by – but not bound by – any applicable enhancement factors when adjusting the length of a sentence. Bise, 380 S.W.3d at 706. In accordance with the broad discretion now afforded our trial court's sentencing decisions,

> misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005. So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld.

Id.

As a preliminarily matter, we deem it necessary to address a line in the trial court's sentencing order that states, "Information explaining the sentence imposed is available upon request. T.C.A. [§] 40-35-210." This court is aware of no authority which authorizes the trial court to offer its reasons for imposing a particular sentence only upon request, and the statute cited above authorizes no such action. As our supreme court stated in Bise, it remains critical that the trial court articulate on the record its reasons for imposing the specific sentence. Bise, 380 S.W.3d at 705 n.41 (emphasis added). The order also states that "the findings on the record are incorporated herein." Hence, the statement that an explanation of the sentence was available upon request was erroneous. Moreover, it was unnecessary because the trial court explained the sentence on the record.

Turning to the issue at hand, the Defendant argues that his ten-year sentence is excessive. The Defendant's sole basis for the argument is that "the trial court erred by not giving him a sentence at the low end of the applicable sentencing range." Under Bise, sentencing decisions are afforded broad discretion, and within-range sentences consistent with the purposes and principles of sentencing will be upheld. See Bise, 380 S.W.3d at 706. The ten-year sentence imposed by the trial court was within the eight to twelve year range of punishment for the Defendant's convictions, and the trial court's basis for the sentence as announced from the bench is consistent with the purposes and principles of the sentencing act. Therefore, this argument is without merit.

Although appellate review generally will extend only to those issues presented for review, this "court may in its discretion consider other issues in order, among other reasons: (1) to prevent needless litigation, (2) to prevent injury to the interests of the public, and (3) to prevent prejudice to the judicial process." Tenn. R. App. P. 13(b). It is under this authority that we review the propriety of the alternative sentence imposed by the trial court. Sentencing the Defendant to an effective ten-year sentence, the trial court ordered twenty-four months of that sentence to be served in the DOC with the remainder to be completed on probation.

Tennessee Code Annotated § 40-35-306 governs split confinement, and it states, in relevant part,

> (a) A defendant receiving probation may be required to serve a portion of the sentence in continuous confinement for up to one (1) year in the local jail or workhouse, with probation for a period of time up to and including the statutory maximum time for the class of the conviction offense.

Tenn. Code Ann. § 40-35-306(a)(emphasis added). The Code grants no authority to extend the confinement portion of a split confinement sentence beyond 365 days. See State v.

Matthew I. Tart, E2009-01315-R3-CD, 2010 WL 1610515, at *3 (Tenn. Crim. App. Apr. 21, 2010); see also State v. Kilby, E2011-02462-CCA-R3CD, 2012 WL 3793435, at *1 (Tenn. Crim. App. Sept. 4, 2012)(sentences resulting in a confinement period of over one year runs afoul of section 40-35-306(a)). The trial court's imposition of a ten-year sentence and requiring twenty-four months of which to be served in the DOC created an illegal sentence because it contravenes section 40-35-306(a), and it must be reversed. Therefore, we remand this case to the trial court for resentencing in accordance with this opinion.

CONCLUSION

Based on our review of the record and the applicable law, we affirm the Defendant's convictions for vandalism and burglary, reverse the sentence imposed, and remand for resentencing.

_____
D. KELLY THOMAS, JR., JUDGE