**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0398n.06
**No. 19-5768**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

<table>
<tr><td>UNITED STATES OF AMERICA,<br><br>        Plaintiff-Appellee,<br><br>v.<br><br>LEE YERKES,<br><br>        Defendant-Appellant.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td><strong>FILED</strong><br>Jul 10, 2020<br>DEBORAH S. HUNT, Clerk<br><br>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE</td></tr>
</table>

BEFORE: MOORE, SUTTON, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge:

After defendant Lee Yerkes pleaded guilty to a federal gun charge, the district court found him eligible for a mandatory minimum sentence of fifteen years under the Armed Career Criminal Act ("ACCA") and sentenced him accordingly. On appeal, Yerkes argues that his previous convictions for burglary under Tennessee and Georgia law do not qualify as ACCA predicates and that the district court erred by finding otherwise. We disagree and therefore affirm.

In 2018, Yerkes pleaded guilty to being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). At the time, he had seven prior convictions for burglary: two for aggravated burglary in Tennessee and five for simple burglary in Georgia. *See* Tenn. Code Ann. § 39-14-403 (1990); Ga. Code Ann. § 16-7-1(a) (1980). Based on those convictions, the district court found that Yerkes qualified as an armed career criminal under 18 U.S.C. § 924(e)(1),

which imposes a mandatory minimum sentence of fifteen years if the defendant has at least three prior convictions "for a violent felony or a serious drug offense, or both." The district court imposed a sentence of 180 months of incarceration followed by five years of supervised release. Yerkes timely appealed his sentence.

## I.

The government argues that Yerkes' prior convictions qualify as ACCA predicates under the Act's enumerated-offense clause. *See* 18 U.S.C. § 924(e)(2)(B)(ii). That clause provides that certain previous felony convictions, including those for "burglary," constitute "violent felon[ies]." To determine whether a past conviction qualifies as burglary under the ACCA, we employ the "categorical approach" and "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—*i.e.*, the offense as commonly understood." *Descamps v. United States*, 570 U.S. 254, 257 (2013). Yerkes' prior convictions count as ACCA predicates "only if the statute's elements are the same as, or narrower than, those of the generic offense." *Id.*

"[T]he contemporary understanding of 'burglary' has diverged a long way from its commonlaw roots." *Taylor v. United States*, 495 U.S. 575, 593 (1990). "So the proper setting for examining the contours of generic burglary is not its understanding at common law, but rather its understanding at the time the ACCA was passed, as evidenced in the criminal codes of the states." *Greer v. United States*, 938 F.3d 766, 771 (6th Cir. 2019). With this frame of reference in mind, the Supreme Court has clarified that "the generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Taylor*, 495 U.S. at 598.

In Tennessee, "[a]ggravated burglary is burglary of a habitation." Tenn. Code Ann. § 39-14-403(a). "Burglary" means, among other things, "[e]nter[ing] a building . . . (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault." Tenn. Code Ann. § 39-14-402(a)(1); *see also* Tenn. Code Ann. § 39-14-401(1) (defining "habitation"). At the time of Yerkes' Georgia burglary convictions, the statute defined "burglary" thus:

> A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another or any building, vehicle, railroad car, watercraft, or other such structure designed for use as the dwelling of another or enters or remains within any other building, railroad car, aircraft, or any room or any part thereof.

Ga. Code Ann. § 16-7-1(a) (1980).

## A.

Yerkes argues that his previous burglary convictions in Tennessee and Georgia state court do not qualify as generic burglary offenses because the "entry" elements in those state statutes are overbroad. In *United States v. Brown*, the defendant had previously been convicted of aggravated burglary under Tennessee Code § 39-14-403 and raised the same nuanced argument Yerkes makes here. 957 F.3d 679, 683 (6th Cir. 2020). We summarized that argument as follows:

> Brown's argument hinges on a subtle common-law distinction. The common law defined burglary narrowly and required more elements than most modern burglary statutes: "At common law, burglary was confined to unlawful breaking and entering a dwelling at night with the intent to commit a felony." *Quarles v. United States*, 139 S. Ct. 1872, 1877 (2019). The common law nevertheless defined the "entry" element of this narrow crime broadly: "As for the entry, any the least degree of it, with any part of the body, or with an instrument held in the hand is sufficient." 4 William Blackstone, *Commentaries on the Law of England* 227 (1770).
>
> Despite the breadth of a common-law "entry," some authorities eventually distinguished the entry of a *body part* (a foot or finger) from the entry of an *instrument* (a hook or firearm). "[I]f any part of the body be within the house, hand or foot; this at common law [was] sufficient[.]" 2 Edward H. East, *Pleas of the Crown* 490 (1806). A person thus "entered" a home merely by reaching an arm into it, whether that reach was designed to steal money or unlock a door. *See* Rollin

M. Perkins, *Criminal Law* 155–56 (1957); *see also Rex v. Perkes*, 171 Eng. Rep. 1204, 1204 (1824).  If only an instrument entered a home, by contrast, whether that entry sufficed depended on the reason for the entry.  If a person used the instrument to commit the intended felony (for example, the person stuck a hook into the home to grab jewelry or a rifle into it to commit a robbery), both Edward Coke and William Blackstone treated the entry of that instrument alone as a burglary.  Blackstone, *supra*, at 227; 3 Edward Coke, *Institutes of the Laws of England* 64 (1648).  But later cases held that if a person used an instrument merely to undertake the "breaking" and did not also use it to commit the additional felony (for example, the person used a drill bit only to drill through a door), the entry of that instrument alone did not suffice.  *See Rex v. Hughes*, 168 Eng. Rep. 305, 305 (1785); 1 William Hawkins, *Pleas of the Crown* 162 (6th ed. 1788).

Brown asks us to incorporate this "entry-by-instrument" distinction into the Armed Career Criminal Act's generic definition of burglary, which covers the unlawful "*entry into*, or remaining in, a building or structure, with intent to commit a crime." *Taylor*, 495 U.S. at 599 (emphasis added).  He adds that Tennessee law defines "enter" to include not just the "[i]ntrusion of any part of the body" but also the "[i]ntrusion of any object in physical contact with the body or any object controlled by remote control, electronic or otherwise." Tenn. Code Ann. § 39-14-402(b).  Brown thus thinks that Tennessee law adopts a broader view of "entry" than the common-law view because it reaches *any* object—even one used only to gain access to a home.  (No state decision, as far as we are aware, has answered this question about § 39-14-402(b)'s scope, and caselaw from before that provision's enactment did not clearly answer the question either. *See State v. Crow*, 517 S.W.2d 753, 753–55 (Tenn. 1974).)  Since Brown's view of this state definition would cover more than his generic definition of "entry," he concludes that Tennessee's definition of "enter" disqualifies all Tennessee burglary convictions from the Armed Career Criminal Act's reach.

*Id.* (alterations in original) (parallel citations omitted).

*Brown* thoroughly analyzed the merits of this argument, *see id.* at 684–89, and concluded that the Supreme Court would not "adopt Brown's view of generic 'entry,'" *id.* at 684.  For starters, "we know that Congress did not view the entry element as a demanding one" because even at common law, little was required to prove an entry:  "Sticking a hand or finger through a window sufficed, as did drilling a hole into the walls of a granary to cause the grain to fall out." *Id.* at 685 (citations and internal quotation marks omitted).  And the Supreme Court has "refused to read the [ACCA] as *limited* to the common-law rules." *Id.*  As mentioned above, the contemporary

understanding of burglary is quite different, and the "arcane distinctions embedded in the common-law definition have little relevance to modern law enforcement concerns." *Taylor*, 495 U.S. at 593.

The court characterized the entry-by-instrument issue as "perhaps the prototypical 'arcane distinction' that *Taylor* would disavow." *Brown*, 957 F.3d at 685 (quoting *Taylor*, 495 U.S. at 593). Congress's chief concern in passing the ACCA was the risk of a violent encounter inherent in certain crimes—for burglary, "between the offender and an occupant, caretaker, or some other person who comes to investigate." *Taylor*, 495 U.S. at 588. And the entry-by-instrument distinction has "no relevance" to that purpose. *See Brown*, 957 F.3d at 685 ("Which burglar creates the greater risk of a violent encounter with a startled homeowner? The one who reaches a finger between a window and an inner shutter before fleeing (which would qualify as an entry under Brown's common-law rule), or the one who violently chops at a door with an axe that intrudes into the home (which would not qualify under his rule)?" (citation omitted)).

The court also examined the criminal codes of the states at the time of the ACCA's enactment, noting that it appears "that the majority of jurisdictions that had examined this question had retained the narrower common-law rule and limited an entry by instrument to the situation where the instrument is used to remove property from the premises or injure or threaten an occupant." *Id.* at 688 (citation and internal quotation marks omitted). But this fact was not dispositive, the court stated, because Supreme Court precedent tells us that "if several state burglary statutes had modestly departed from a common-law rule of burglary when Congress passed the Armed Career Criminal Act, courts should interpret the Act's generic definition of burglary to cover those state statutes." *Id.* at 689. Every state statute need not be identical to qualify as generic burglary; states are instead entitled to some "breathing space." *Id.* at 687.

Because the departure at issue was slight and "did not completely redefine the crime of 'burglary,'" the court found that the entry-by-instrument distinction did not make the Tennessee statute broader than generic burglary. *Id.* at 688.

B.

Yerkes argues that we are not obligated to follow *Brown* here because its discussion of the entry-by-instrument distinction is nonbinding dicta. That is, the court in *Brown* recognized that a prior case, *Brumbach v. United States*, 929 F.3d 791, 795 (6th Cir. 2019), rejected the entry-by-instrument argument because "a panel of this court cannot overrule [*United States v.*] *Nance*." *Nance* held that "Tennessee aggravated burglary represents a generic burglary capable of constituting a violent felony for ACCA purposes."[1]   481 F.3d 882, 888 (6th Cir. 2007). Recognizing the authority of *Nance* and *Brumbach*, the court in *Brown* stated that "Brown should direct his argument to our en banc court or the Supreme Court."  957 F.3d at 683–84.  Even so, the court thought "Brown's argument weighty enough to warrant a response from this court on the merits too."  *Id.* at 684.

Yerkes also points out that he has only two prior convictions for Tennessee aggravated burglary, and *Brown*, *Brumbach*, and *Nance* do not discuss the statute of his Georgia convictions.[2]

---

[1]*Nance*'s holding was, for a time, overruled by this court's en banc decision in *United States v. Stitt*, 860 F.3d 854, 861 (6th Cir. 2017) (en banc).  After the Supreme Court granted certiorari and reversed, *see United States v. Stitt*, 139 S. Ct. 399, 408 (2018), we recognized that "*Nance*'s holding . . . is once again the law of this circuit," *Brumbach*, 929 F.3d at 794.

[2]We addressed the statute of Yerkes' Georgia burglary convictions in *Richardson v. United States*, 890 F.3d 616 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 349 (2018).  There, the court determined that the statute is divisible and that the elements of the defendant's convictions— "(1) an unlawful entry (2) into a dwelling house or building (3) with intent to commit a crime therein"— "substantially conform to the generic definition of burglary announced by the Supreme Court."  *Id.* at 629.  As discussed below, the *Shepard* documents here similarly show that in all five Georgia burglary counts, Yerkes pleaded guilty to burgling either a dwelling house or a building.

But even if we are not bound by it, we find *Brown*'s discussion—and rejection on the merits—of the entry-by-instrument argument persuasive. Yerkes offers no reason for us to treat the Georgia statute differently from the Tennessee statute in this respect, and upon examining the two, we find none. Accordingly, we reject his argument that the statutes are overbroad based on their "entry" elements.

## II.

Yerkes offers another reason why his prior burglary convictions should not count as ACCA predicates. He claims that the government failed to prove that his burglary offenses were "committed on occasions different from one another." *See* 18 U.S.C. § 924(e)(1).

> [T]wo offenses are committed on different occasions under the Act if: (1) it is possible to discern the point at which the first offense is completed, and the subsequent point at which the second offense begins; (2) it would have been possible for the offender to cease his criminal conduct after the first offense, and withdraw without committing the second offense; or (3) the offenses are committed in different residences or business locations.

*United States v. Paige*, 634 F.3d 871, 873 (6th Cir. 2011) (citation and internal quotation marks omitted).

*Shepard* documents provide the following information. *See Shepard v. United States*, 544 U.S. 13 (2005). One indictment in the Catoosa County, Georgia Superior Court charged Yerkes with four counts of burglary of a "dwelling house." Each count listed a different address and owner for the burgled dwelling house in question. The first count alleged a commission date of August 22, 2008, while the other three listed a commission date of September 25, 2008. A separate indictment charged Yerkes with burgling a "business premises" on July 14, 2008, and listed its name and address. Two "final disposition" documents show that Yerkes pleaded guilty to all five burglary counts. Two indictments in the Hamilton County, Tennessee Criminal Court charged Yerkes with aggravated burglaries of two different "habitation[s]," each with a different owner.

Each indictment listed a different commission date for the aggravated burglaries: July 7, 2008, and July 14, 2008. Two criminal judgments show that Yerkes pleaded guilty to these two aggravated burglary charges.

Because each of the seven counts specified a "different residence[ ] or business location[ ]," *Paige*, 634 F.3d at 873, the *Shepard* documents show that Yerkes committed the burglary offenses (or at very least, three of them) on different occasions. But Yerkes contends that "the *Shepard*-approved evidence does not establish that he necessarily *admitted* that he committed the burglaries on occasions different from one another." (Emphasis added.) That is, aside from one "reference to one specific individual (including her address for purposes of restitution)[,] nothing in the judgment identifies the date/location of any offense, nor does anything else in the judgment indicate that Mr. Yerkes necessarily admitted the time or location of any burglary." Because "[t]he time or location of the crime, then, is merely a fact – not an element," Yerkes argues that relying on the above information from the indictments would violate his Sixth Amendment rights. *See United States v. King*, 853 F.3d 267, 272 (6th Cir. 2017).

*United States v. Hennessee* forecloses this argument. 932 F.3d 437, 444 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 896 (2020). "[A] district court may consider both elemental and non-elemental facts contained in *Shepard*-approved documents to determine whether prior felonies were committed on occasions different from one another for purposes of the ACCA." *Id.* The district court here properly did so, and correctly imposed an ACCA-enhanced sentence.

III.

For these reasons, we affirm the district court's judgment.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** The majority opinion departs from well-established principles regarding the application of the categorial approach to burglary convictions in Armed Career Criminal Act ("ACCA") cases as set forth by the Supreme Court. The majority applies the entry-issue analysis from *United States v. Brown*, 957 F.3d 679 (6th Cir. 2020), to reject Yerkes's arguments. But the *Brown* analysis is not binding because it is dicta, nor is it persuasive due to its significant errors. Proper application of the categorical approach from *Taylor v. United States*, 495 U.S. 575 (1990), demonstrates that Yerkes's Georgia burglary convictions are not categorical matches for generic burglary because Georgia's entry element of burglary is broader than the entry element of generic burglary.

We review de novo "[w]hether a defendant is a career offender." *United States v. Cooper*, 739 F.3d 873, 877 (6th Cir. 2014). We apply the categorical approach to determine whether a defendant's prior conviction for burglary is an ACCA predicate offense. *Greer v. United States*, 938 F.3d 766, 770–71 (6th Cir. 2019).[1] Under the categorical approach, we "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime." *Id.* at 771 (quoting *Descamps v. United States*, 570 U.S. 254, 257 (2013)). If the elements of the state criminal statute "are broader than those of generic burglary," a prior state conviction

---

[1] We classify a defendant as an armed career criminal if he is convicted under 18 U.S.C. § 922(g)(1) for possessing a firearm as a convicted felon and if he "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). A "violent felony" is

> any crime punishable by imprisonment for a term exceeding one year . . . that—
>
> (i)    has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii)   is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

§ 924(e)(2)(B). "We refer to § 924(e)(2)(B)(i) as the 'use of force clause," the list of offenses in § 924(e)(2)(B)(ii) as the "enumerated offenses" clause, and the remaining "portion of § 924(e)(2)(B)(ii) . . . as the 'residual clause.'" *United States v. Mitchell*, 743 F.3d 1054, 1058 (6th Cir. 2014). Here, we consider "burglary" under the enumerated offense clause. The residual clause was ruled unconstitutional in *Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015).

under that statute does not qualify as generic burglary under the ACCA. *United States v. Stitt*, 139 S. Ct. 399, 405 (2018) (quoting *Mathis v. United States*, 136 S. Ct. 2243, 2257 (2016)).

Yerkes contends that entry for Georgia burglary is broader than generic entry. Specifically, he argues that the generic definition of "entry" with an instrument is when an instrument crosses the threshold *and* the instrument is used or intended to be used to commit a further felony inside (instrument-for-crime approach). Appellant Br. at 8; Reply Br. at 2 & n.1. Georgia penalizes as an entry when an instrument simply crosses the threshold of the structure (any-instrument approach). Appellant Br. at 8; Reply Br. at 2 & n.2. Under the generic definition of entry, Yerkes argues, Georgia penalizes mere attempted entries, and therefore criminalizes attempted burglaries, which is broader than generic burglary. Appellant Br. at 8. Thus, it is necessary to determine (1) the definition of generic entry and (2) whether Georgia burglary is broader than generic burglary based on the entry element.

## I. Generic entry is defined as the majority, instrument-for-crime approach

*Taylor* did not define the entry element of generic burglary, but it did give federal courts the method for discerning the generic definition of entry. *See Taylor*, 495 U.S. at 598. The Supreme Court determined that "Congress meant by 'burglary' the generic sense in which the term is now used *in the criminal codes of most States*." *Id.* (emphasis added); *see also id.* at 589 ("Congress, at least at that time [in 1986] had in mind a modern 'generic' view of burglary, roughly corresponding to the definitions of burglary *in a majority of the States' criminal codes*." (emphasis added)); *Stitt*, 139 S. Ct. at 406. Thus, the question is not what the understanding of burglary was at common law, "but rather [Congress's] understanding at the time the ACCA was passed." *Greer*, 938 F.3d at 771. It is well established that in this circuit, we find the generic definition "by surveying how the crime is described across jurisdictions, as well as consulting sources such as

the Model Penal Code." *Cooper*, 739 F.3d at 879 (quoting *United States v. Rede-Mendez*, 680 F.3d 552, 556 (6th Cir. 2012)); *see also Keeley v. Whitaker*, 910 F.3d 878, 882 (6th Cir. 2018); *Greer*, 938 F.3d at 771; *United States v. Yates*, 866 F.3d 723, 733 (6th Cir. 2017). In its two most recent ACCA-burglary cases, the Supreme Court followed *Taylor*, adopting the majority state view as the generic definition of certain aspects of burglary. *See Quarles v. United States*, 139 U.S. 1872, 1878 (2019) (intent for remaining-in burglary); *Stitt*, 139 S. Ct. at 406 (locational element).

In 1986, the majority rule among the states was the instrument-for-crime approach; nineteen states had adopted the instrument-for-crime approach and eight had adopted the any-instrument approach. *See* Nev. Rev. Stat. § 193.0145 (1985); Wash. Rev. Code § 9A.52.010(2) (1985); *Walker v. State*, 63 Ala. 49, 51–52 (1879); *Sears v. State*, 713 P.2d 1218, 1220 (Alaska Ct. App. 1986); *Thompson v. State*, 477 S.W.2d 469, 471–72 (Ark. 1972); *Foster v. State*, 220 So.2d 406, 407 (Fla. Dist. Ct. App. 1969); *People v. Davis*, 279 N.E.2d 179, 181 (Ill. App. Ct. 1972); *Mattox v. State*, 101 N.E. 1009, 1009 (Ind. 1913); *State v. Ervin*, 573 P.2d 600, 601 (Kan. 1977)[2]; *Stamps v. Commonwealth*, 602 S.W.2d 172, 173 (Ky. 1980); *State v. Liberty*, 280 A.2d 805, 808 (Me. 1971); *Commonwealth v. Burke*, 467 N.E.2d 846, 849 (Mass. 1984); *State v. Hodges*, 575 S.W.2d 769, 772 (Mo. Ct. App. 1978); *State v. O'Leary*, 107 A.2d 13, 15 (N.J. Super. Ct. App. Div. 1954); *State v. Tragni*, 449 N.Y.S.2d 923, 928 (N.Y. Sup. Ct. 1982); *State v. Sneed*, 247 S.E.2d 658, 659 (N.C. Ct. App. 1978); *State v. Crawford*, 80 N.W. 193, 194 (N.D. 1899); *State v. Chappell*, 193 S.E. 924, 924–25 (S.C. 1937); *Mirich v. State*, 593 P.2d 590, 593 n.4 (Wyo.

---

[2] The government argues that Kansas should be counted along with the states following the any-instrument approach, citing *State v. Martin*, 658 P.2d 1024 (Kan. 1983), in support. Appellee Br. at 19. *Martin* addresses the Kansas state crime of eavesdropping, however. 658 P.2d at 1026.

1979) (all applying the instrument-for-crime approach).[3] *But see* Ariz. Rev. Stat. Ann. § 13-1501(2) (1978); 11 Del. Code Ann. § 829(b) (1972); Tex. Code Ann. § 30.02(b)(2) (1973); Utah Code Ann. § 76-6-201(4)(b) (1973); *People v. Osegueda*, 210 Cal. Rptr. 182, 185–87 (Cal. App. Dep't Super. Ct. 1984); *Mullinnix v. State*, 338 S.E.2d 752, 753 (Ga. Ct. App. 1985); *State v. Tixier*, 551 P.2d 987, 988–89 (N.M. Ct. App. 1976); *State v. Crow*, 517 S.W.2d 751, 754–55 (Tenn. 1974) (all applying the any-instrument approach). Contemporary commentators recognized that the instrument-for-crime approach was the majority rule, including Professors LaFave, Scott, Perkins, and Boyce. *See* 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 8.13(b) (1986); Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 254–55 (3d ed. 1982) ("But in any event the rule became firmly established that the insertion of a tool or instrument does not constitute an *entry*, within the law of burglary, if it is used merely to effect a breaking."). Tellingly, neither the government nor the majority disputes that the majority rule in 1986 was the instrument-for-crime approach. *See* Appellee Br. at 18–19; Majority Op. at 5. The instrument-for-crime approach thus defines generic entry.

The majority follows the analysis in *Brown*, which concluded that the definition of generic entry is the minority, any-instrument approach. Majority Op. at 3–7; *see also Brown*, 957 F.3d at 683–89. This analysis is not binding, however, because *Brown*, a Tennessee-aggravated-burglary case, held that *Brumbach v. United States*, 929 F.3d 791 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 974 (2020), foreclosed the defendant's entry argument. *Brown*, 957 F.3d at 683–84. In any event, the majority's reiteration of the *Brown* analysis is unpersuasive because it makes four significant errors.

---

[3]The government characterizes some of these states as merely having "language in their jurisprudence suggesting that they endorsed" the instrument-for-crime approach, Appellee Br. at 21 n.7, but this is an understatement. Each state cited has set forth the instrument-for-crime approach as its definition of entry.

First, the majority bucks binding Supreme Court precedent, *Taylor*, by adopting a common-law approach to defining the contours of generic burglary. Majority Op. at 3–7. It is true that Congress "had in mind at least the 'classic' common-law definition when [it] considered the inclusion of burglary as a predicate offense." *Taylor*, 495 U.S at 593. But the Court has been explicit: "[W]e made clear in *Taylor* that Congress intended the definition of 'burglary' to reflect 'the generic sense in which the term [was] used in the criminal codes of most States' at the time the [ACCA] was passed." *Stitt*, 139 S. Ct. at 406 (second alteration in original) (quoting *Taylor*, 495 U.S. at 598). Crucially, *Taylor* expressly declined to adopt a common-law-only focus. *Taylor*, 495 U.S. at 593–96. The majority and *Brown* reject the clear dictates of *Taylor* by failing to define generic entry as the majority state rule in 1986.

Second, even following a common-law-only focus, the majority and *Brown* erroneously define generic entry. The common-law rule is the same as the modern, generic rule—the instrument-for-crime approach. Wayne R. LaFave, 3 *Substantive Criminal Law* § 21.1(b), 210 n.36 (2d ed. 2003) ("Today, the majority view is 'that an entry can occur if an instrument, "being used to commit the felony intended," passes the line of the threshold, regardless of whether the instrument was used in the breaking,' while the minority position is 'that an entry can occur if any instrument, whether or not intended for use to commit a felony, crosses the threshold.'" (citation omitted)). As Professor LaFave explained, though common-law commentators such as William Blackstone, Edward Coke, and Matthew Hale did not expressly distinguish between entry with an instrument with and without the intent to use the instrument to commit a crime within a structure, "it might be implied from their examples." *Id.* Upon further examination of these examples, it is clear that Blackstone, Coke, and Hale viewed entry by instrument in a manner consistent with the instrument-for-crime approach. *See* 4 William Blackstone, *Commentaries on the Law of England*

227 (1769) ("As for the entry, any the least degree of it, with any part of the body, or *with an instrument held in the hand*, is sufficient: as, to step over the threshold, to put a hand *or a hook in at the window to draw out goods, or a pistol to demand one's money, are all of them burglarious entries*.") (emphasis added); 1 Matthew Hale, The History of the Pleas of the Crown 555 (1736) (reiterating the hook and pistol examples); 3 Edward Coke, *Institutes of the Laws of England* 64 (1644) (same). The same is true of other common-law sources; though the two approaches are not expressly distinguished, the examples relied upon are consistent with the instrument-for-crime approach. *See Rex v. Hughes*, 168 Eng. Rep. 305, 305 (1785); 2 Edward H. East, *Pleas of the Crown* 490 (1806); 1 William Hawkins, *Pleas of the Crown* 162 (6th ed. 1788). The government omits this crucial context, Appellee Br. 17, as did the panel in *Brown*, 957 F.3d at 684. Upon closer scrutiny, not one common-law authority from the government's brief can be said to support its contention that the common-law rule was the any-instrument approach. *See* Appellee Br. at 17–19. And *Brown* does not cite a single common-law example following the any-instrument approach. The panel in *Brown* merely inferred a broad approach to entry at common law by citing cases addressing physical, bodily entries, 957 F.3d at 685, and cases that followed the instrument-for-crime approach, *id.* (citing *Walker*, 63 Ala. at 51–52; *Crawford*, 80 N.W. at 194–95).[4] Given the authorities discussed above, the majority's conclusion that the traditional rule was the any-instrument approach is confounding.

---

[4]The *Brown* panel relies on two state cases adopting the instrument-for-crime approach. In *Walker*, the Supreme Court of Alabama expressly stated that "the intrusion of the instrument is not, of itself, an *entry*." 63 Ala. at 52. Rather, the instrument must be "necessary to the consummation of the criminal intent." *Id.* The Supreme Court of North Dakota cited the same rule in *Crawford* and concluded that an entry had occurred because the defendant had used a tool to bore a hole into the granary, knowing that the tool "set the law of gravitation in motion," *i.e.* caused the grain to spill through the hole. 80 N.W. at 194 ("When the auger was withdrawn from the aperture made with it, the corn ran into the sack he used in its asportation. There was a breaking and entry . . . .").

The third error—and the crux of the majority's argument—is the conclusion that the difference between the instrument-for-crime and any-instrument approaches is insignificant. The difference between the instrument-for-crime and the any-instrument approaches is not an "arcane distinction[ ]" from common law that does not fit within the generic definition of burglary, *Taylor*, 495 U.S. at 593; Majority Op. at 5, nor is Yerkes "seizing on modest state-law deviations from the generic definition of burglary," *Quarles*, 139 S. Ct. at 1880; *see* Majority Op. at 5–6. The instrument-for-crime approach criminalizes only entries that were committed with an instrument intended to be used to commit a crime inside the structure. When an instrument crosses the threshold without this intent, it constitutes an attempted entry. Therefore, the any-instrument approach criminalizes attempted burglaries. Attempted burglary is inconsistent with the generic definition of burglary. In *James v. United States*, the Court expressly concluded that attempted burglary does not "qualify as one of the specific crimes enumerated in clause (ii) . . . . because it does not meet the definition of burglary under ACCA that this Court set forth in *Taylor*." 550 U.S. 192, 197 (2007), *overruled on other grounds by Johnson v. United States*, 135 S. Ct. 2551 (2015). Neither the majority nor *Brown* addresses *James*. The difference between these two approaches is *not* a distinction without a difference.

The final error made by the majority is its conclusion that the instrument-for-crime approach does not satisfy "Congress's chief concern in passing the ACCA," "the risk of a violent encounter" inherent in burglaries. Majority Op. at 5. Relatedly, the government contends that defining generic entry under the instrument-for-crime approach will mean that Congress intended to enact a "self-defeating statute" because if the instrument-for-crime approach were the definition of generic entry, then burglary convictions in states that *today* have not spoken on the issue or that

have adopted the any-instrument approach would no longer serve as ACCA predicates. Appellee Br. at 25 (quoting *Quarles*, 139 S. Ct. at 1879). These arguments are misguided.

Adopting the instrument-for-crime approach to generic entry will not undermine Congress's purpose in passing the ACCA. The majority is correct insofar as attempted burglary implicates congressional intent in including dangerous crimes as predicates in the ACCA. The Court concluded in *James* that Congress believed attempted burglary presented a high risk of violence and thus intended the ACCA to include attempted burglary convictions. *See James*, 550 U.S. at 203–07. But these concerns did not motivate Congress to include attempted burglary in the enumerated offenses clause—instead, they motivated Congress to cover attempted burglary through the residual clause. *See id.* at 197, 209. The Court later held that Congress exceeded constitutional restraints when it did so, however. *Johnson*, 135 S. Ct. at 2563 ("We hold that imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process."). Thus, properly applying *Taylor* to discern the contours of the entry element of generic burglary does not undermine congressional intent as to the inclusion of burglary in the enumerated offenses clause.

As for the government, it aims at the wrong targets. We look to the *majority* rule of the states *when the ACCA was enacted*. *Stitt*, 139 S. Ct. at 406. Therefore, the government's focus on the *minority* of states' approaches *today* is misdirected. Additionally, there is no basis for the government's assertion that determining that generic entry is defined by the instrument-for-crime approach will necessarily impact the jurisdictions that have yet to address the issue or that this concern should drive our analysis. In *Quarles*, only five states had addressed the issue in 1986, and the fact that the vast majority of the states presently had not spoken on the issue did not stop the Court from adopting the majority approach of the few states. *See Quarles*, 139 S. Ct. at 1878

& n.1. The government provides no authority for its implied proposition that a state that is silent on the entry rule will be considered to have adopted the minority, any-instrument approach. The government cites *Stokeling v. United States*, 139 S. Ct. 544, 552 (2019), and *United States v. Castleman*, 572 U.S. 157, 167 (2014), for the general proposition that Congress would not enact a provision that excludes many state statutes. In *Stokeling*, "it [was] clear that many States' robbery statutes would not qualify as ACCA predicates under Stokeling's reading" because his reading impacted other robbery offenses. 139 S. Ct. 544, 552 (2019). The government outlines no such ripple effect here. And both *Stokeling* and *Castleman* were non-burglary cases, meaning neither had to contend with *Taylor*. *See Stokeling*, 139 S. Ct. at 551–52 (robbery); *Castleman*, 572 U.S. at 163 (domestic violence). Given the clarity of *Taylor*'s exposition of congressional intent, it is difficult to see why declining to follow *Taylor* would better follow congressional intent under these circumstances.

In sum, *Taylor* is clear, binding precedent that compels one conclusion—the majority, instrument-for-crime approach provides the definition of the entry element of generic burglary.

## II. Georgia burglary criminalizes conduct broader than generic burglary

Once the generic definition is determined, we compare the elements of the state offense to those of the generic offense, focusing on "[t]he minimum culpable conduct criminalized by the state statute . . . to which there is a 'realistic probability, not a theoretical possibility, that the state would apply the statute." *Yates*, 866 F.3d at 728 (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013)). Though the Georgia statute does not define entry, *see* Ga. Code Ann. § 16-7-1(a) (1980), Georgia courts have interpreted "entry" to mean "'break[ing] the plane' of the structure." *Mullinnix*, 338 S.E.2d at 753 (quotations in original); *see also Meadows v. State*, 590 S.E.2d 173, 177–78 (Ga. Ct. App. 2003). Georgia applies the any-instrument approach, and therefore the

minimum culpable conduct under the Georgia burglary statute is attempted burglary based on an attempted entry.

There is a realistic probability that Georgia would apply its burglary statute to attempted entries. The most common method of demonstrating a realistic probability is for a defendant to "point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). But that is not the only method. For example, we have relied on the plain text of a statute to hold that there is a realistic probability that the state would apply its statute to the minimum culpable conduct in question. *See United States v. Camp*, 903 F.3d 594, 602 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 845 (2019); *see also United States v. Havis*, 907 F.3d 439, 446 (6th Cir. 2018) (explaining that "[i]f the text of Tennessee's attempt statute was plainly overbroad, that would be a different matter" regarding whether a defendant must supply a case to demonstrate a realistic probability), *rev'd on other grounds*, 927 F.3d 382 (6th Cir. 2019) (en banc). Like plain statutory text, pattern jury instructions may also be so clear as to demonstrate a realistic probability, not a theoretical possibility, that a state statute is applied to the least of the acts criminalized. *See United States v. Daniels*, 915 F.3d 148, 163 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 1264 (2020); *United States v. Glass*, 904 F.3d 319, 323 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 840 (2019); *United States v. McCranie*, 889 F.3d 677, 680 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 1260 (2019).

Georgia's pattern jury instructions show a realistic probability that Georgia criminalizes any-instrument entries. Georgia Suggested Pattern Jury Instruction 2.62.31 provides, "[t]o constitute 'entry,' the evidence need only show a [']breaking of the plane' of the structure." 2 *Ga. Suggested Pattern Jury Instr.*, Crim. 2.62.31 (4th ed. 2020). The instruction's meaning is plain,

and therefore there is a realistic probability Georgia applies its burglary statute to attempted entries. Accordingly, Georgia's entry element is broader than the generic entry element as defined by the instrument-for-crime approach, and Georgia burglary is not a categorical match for generic burglary.

## III. Conclusion

For the reasons set forth above, Yerkes's Georgia burglary convictions cannot serve as ACCA predicates. Once Yerkes's five Georgia convictions are eliminated from his ACCA-predicate tally, he is left with only his two Tennessee convictions. This is insufficient for Yerkes to be classified as an armed career criminal for sentencing under the ACCA. Yerkes's sentence should be vacated, and his case remanded for resentencing. For these reasons, I dissent.